## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

A.M., an individual,

               Plaintiff,

    v.

WYNDHAM HOTELS & RESORTS, INC.,
et al.,

               Defendants.

Case No. 2:22-cv-03797

Chief Judge Algenon L. Marbley

Magistrate Judge
Elizabeth A. Preston Deavers

### DEFENDANT WYNDHAM HOTELS & RESORTS, INC.'S MOTION TO DISMISS, MOTION TO TRANSFER VENUE, OR, ALTERNATIVELY, MOTION FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292(B)

Pursuant to Rules 12(b)(2), (4), (5), and (6) of the Federal Rules of Civil Procedure, Defendant Wyndham Hotels & Resorts, Inc. ("WHR") moves to dismiss the Complaint for lack of personal jurisdiction, insufficient process/service of process, and failure to state a claim upon which relief can be granted, and, alternatively, WHR requests transfer of venue to the United States District Court for the Central or Southern District of California. Should the Court deny WHR's motion, WHR requests certification pursuant to 28 U.S.C. § 1292(b) to pursue an interlocutory appeal to the Sixth Circuit Court of Appeals because such denial would raise substantial ground for difference of opinion on the following controlling questions of law: (1) whether a plaintiff must adequately allege a violation of 18 U.S.C. § 1591(a) against a defendant in order to state a claim under 18 U.S.C. § 2255 and invoke nationwide service of process and, if so, did the Complaint accomplish that here with respect to WHR; and (2) whether a plaintiff must plausibly allege that a defendant knowingly benefited from participating in a venture that violated Section 1591(a) as to the plaintiff and that the defendant had constructive or actual knowledge that the undertaking or venture violated Section 1591(a) as to the plaintiff in order to state a claim under 18 U.S.C.

§ 1595(a) and, if so, did the Complaint accomplish that here with respect to WHR.

A Memorandum of Law in support is attached.

Dated: June 8, 2023     Respectfully submitted,

            */s/ Michael R. Reed*
            Michael R. Reed (0063995)
            Elisé K Yarnell (0093996)
            Hahn Loeser & Parks, LLP
            65 East State Street, Suite 1400
            Columbus, Ohio 43215
            T: 614.233.5165
            F: 614.221.5909
            mreed@hahnlaw.com
            eyarnell@hahnlaw.com

            David S. Sager (*pro hac vice*)
            DLA Piper LLP (US)
            51 John F. Kennedy Parkway, Suite 120
            Short Hills, New Jersey 07078-2704
            T: 973.520.2550
            F: 973.520.2551
            david.sager@us.dlapiper.com

            Melissa A. Reinckens (*pro hac vice*)
            DLA Piper LLP (US)
            4365 Executive Drive, Suite 1100
            San Diego, California 92121-2133
            T: 619.699.2798
            F: 619.764.6624
            melissa.reinckens@us.dlapiper.com

            Christopher B. Donovan (*pro hac vice*)
            DLA Piper LLP (US)
            845 Texas Ave., Suite 3800
            Houston, Texas 77002
            T: 713.425.8449
            F: 713.425.6040
            christopher.b.donovan@us.dlapiper.com

            *Counsel for Defendant*
            *Wyndham Hotels & Resorts, Inc.*

## MEMORANDUM OF LAW

### I. INTRODUCTION

Plaintiff's Complaint asserts claims under Section 1595(a) of the Trafficking Victims Protection Reauthorization Act ("TVPRA") and Masha's Law, 18 U.S.C. § 2255 based on her alleged trafficking at hotels in southern California, including independently owned and operated facilities operating as Days Inn®, Travelodge®, and Super 8® franchises, sometime between 2010 and 2016. Plaintiff seeks to invoke Masha's Law based on the allegation that she met her traffickers while she was sixteen years old, but she does not allege her age during the time of her alleged trafficking at these hotels.

Plaintiff's Complaint should be dismissed for three reasons. First, the Complaint does not allege facts plausibly suggesting that WHR committed a predicate criminal violation (i.e., a sex-trafficking crime under 18 U.S.C. § 1591(a)(2)) to state a claim under Masha's Law and, as a result, the Court lacks personal jurisdiction over WHR.[1] Second, the Complaint does not plausibly state a claim under Section 1595(a) of the TVPRA because Plaintiff has not alleged that WHR knowingly benefited from participating in a venture that violated Section 1591(a) as to Plaintiff or that WHR had constructive or actual knowledge that the undertaking or enterprise violated the Section 1591(a) as to Plaintiff. Third, Plaintiff failed to effectuate service within the time allowed under Rule 4.

Alternatively, even if this Court were to conclude that it has personal jurisdiction over WHR based on Masha's Law, the case should be transferred to the Central or Southern District of

---

[1] WHR recognizes that the Court previously determined that personal jurisdiction and venue over WHR are proper in this District in the context of its Orders to show cause why venue should not be transferred. *See In re Hotel TVPRA Litig.*, No. 2:22-cv-03799, 2023 WL 3075851 (S.D. Ohio Apr. 25, 2023). Inasmuch as WHR had not been served in this action at that time, WHR did not appear or submit briefing in this matter in the context of those Orders.

California because that is where all of the conduct at issue is alleged to have occurred and where most of the witnesses are likely to reside.

Should the Court decline to dismiss the Complaint or transfer venue to the Central or Southern District of California, WHR respectfully requests that the Court grant certification for an interlocutory appeal to the Sixth Circuit Court of Appeals pursuant to 28 U.S.C. § 1292(b).

## II.    BACKGROUND

The Complaint alleges that Plaintiff, a victim of sex trafficking, met her traffickers "when she was sixteen (16) years old" without specifying when that was. ECF No. 1 at ¶ 44 (PageID 13). Plaintiff's claims against WHR are based on her allegation that she was trafficked at unspecified times between 2010 and 2016 at Days Inn®, Travelodge®, and Super 8®-branded franchises (the "Facilities"). *Id.* at ¶ 49 (PageID 13-14). The Complaint alleges that the Facilities are franchised, referring to them as "branded" properties that operated subject to a "franchise agreement". *Id.* at ¶ 137 (PageID 33). Currently, WHR is the ultimate parent company to the franchisors of the Days Inn®, Travelodge®, and Super 8® hotel brands, but as a matter of public record and as Plaintiff's counsel is well aware, WHR did not come into existence until 2018.

The crux of the Complaint is that WHR (or, presumably, some other unidentified corporation) failed to prevent Plaintiff from being trafficked. *See, e.g.*, ECF No. 1 at ¶¶ 120, 126 (PageID 28-30). The Complaint further alleges that the franchisees' staff (not WHR) interacted with Plaintiff's traffickers and witnessed indicia of her trafficking. *See* ECF No. 1 at ¶¶ 66-101 (PageID 16-22). Based on these allegations, Plaintiff alleges two claims: (1) a beneficiary liability claim under 18 U.S.C. § 1595(a) of the TVPRA; and (2) a claim under 18 U.S.C. § 2255 of Masha's Law, which specifically refers to a predicate violation of 18 U.S.C. § 1591(a), the perpetrator liability provision of the TVPRA.

## III.    LEGAL STANDARDS

To avoid dismissal for lack of personal jurisdiction, a plaintiff must show that the defendant is "amenable to suit under the forum state's long-arm statute and the due process requirements of the Constitution must be met." *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994). The Constitution "allows for two kinds of personal jurisdiction: general and specific." *Maxitrate Tratamento Termico E Controles v. Super Sys., Inc.*, 617 F. App'x 406, 408 (6th Cir. 2015). "General jurisdiction allows a plaintiff to sue a defendant 'on any and all claims,' regardless of the connection (or lack thereof) between the claim and the forum." *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 121 (2014)); *C.T. v. Red Roof Inns, Inc.*, No. 2:19-CV-5384, 2021 WL 602578, at *3 (S.D. Ohio Feb. 16, 2021) (Marbley, J.) (hereinafter, "*C.T. I*"), *reconsideration denied*, 2021 WL 2942483 (S.D. Ohio July 1, 2021) (hereinafter, "*C.T. II*"). "Specific jurisdiction, on the other hand, allows a plaintiff to sue a defendant only on claims that arise out of the defendant's activities in the forum state." *Id.* at 408. "Of course, if jurisdiction is not proper under the Due Process Clause it is unnecessary to analyze jurisdiction under the state long-arm statute, and vice-versa." *Conn v. Zakharov*, 667 F.3d 705, 711-12 (6th Cir. 2012); *IDS Publ'g Corp. v. Reiss Profile Europe, B.V.*, No. 2:16-CV-00535, 2017 WL 4217156, at *10 (S.D. Ohio Sept. 19, 2017). A plaintiff must allege facts supporting personal jurisdiction with "reasonable particularity." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).

The standard for transferring venue is reflected in 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). If a case could have been brought in a different district pursuant to the general venue statute, 28 U.S.C. § 1391, the district court weighs various public and private interest factors to determine whether transfer is warranted for the convenience of the parties and witnesses and is

in the interest of justice. *See, e.g.*, *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 849 (S.D. Ohio 2007)

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts require a plaintiff to allege facts that "state a claim [for] relief that is plausible on its face" and, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Crawford v. Columbus State Cmty. Coll.*, 196 F. Supp. 3d 766, 772 (S.D. Ohio 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A complaint cannot survive a motion to dismiss unless it contains "direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)). Mere legal conclusions, unsupported by well-pled facts, are insufficient. *Hogan v. Cleveland Ave Rest. Inc.*, No. 2:15-CV-2883, 2018 WL 1475398, at *2 (S.D. Ohio Mar. 26, 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Rather, "[l]egal conclusions 'must be supported by well-pleaded factual allegations . . . [that] plausibly give rise to an entitlement of relief.'" *Thomas v. Progressive Cas. Ins. Co.*, No. 3:15-CV-456, 2016 WL 3766406, at *2 (S.D. Ohio July 11, 2016) (quoting *Iqbal*, 556 U.S. at 679).

Finally, a court may certify an interlocutory order for an appeal if it "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002).

IV.   **ARGUMENT & AUTHORITIES**

A.   **The Court Lacks Personal Jurisdiction Over WHR Because Plaintiff Does Not Allege Any Facts Suggesting That WHR Is At Home In Ohio, Any Conduct That Occurred In Ohio, Or Any Conduct That Can State A Claim Under Masha's Law.**

General jurisdiction hinges on whether the defendant is "at home" in the forum. *See Daimler*, 571 U.S. at 139. "A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' [in]." *Id.* at 160 n.20. Accordingly, even a substantial and continuous course of business in a jurisdiction is plainly insufficient to establish general jurisdiction. *Id.* at 137-38 ("Plaintiffs would have us . . . approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business.' . . . That formulation, we hold, is unacceptably grasping."). A corporation is "at home" where it is incorporated and where it maintains its headquarters (i.e., its principal place of business). *See, e.g.*, *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). Only in the most "exceptional cases" will a corporate defendant be "at home" in any forum besides its headquarters and state of incorporation. *Id.* (providing the example of a corporation that temporarily moves its headquarters to a forum as an "exceptional case"); *Reyes v. Freedom Smokes, Inc.*, No. 5:19-CV-2695, 2020 WL 1677480, at *3 (N.D. Ohio Apr. 6, 2020).

WHR is headquartered in Parsippany, New Jersey and it is incorporated in Delaware. *See* ECF No. 1 at ¶ 21 (PageID 6). As recognized in *C.T. I*, the "existence of franchise locations in Ohio is not sufficient to establish general personal jurisdiction" over WHR and other defendants "because these contacts are not so continuous and systemic as to render [them] 'at home' in Ohio." 2021 WL 602578, at *3; *accord Rafferty v. Denny's, Inc.*, No. 5:18-CV-2409, 2019 WL 2924998, at *3 (N.D. Ohio July 8, 2019) ("This Court does not have general jurisdiction over Denny's

because it is incorporated in Florida and has its headquarters in South Carolina. Its mere conducting of business at four (4) restaurants in Ohio . . . does not confer general jurisdiction . . . .”). The Court, therefore, lacks general personal jurisdiction over WHR.

For specific personal jurisdiction to exist, a plaintiff’s claims (among other things) “must arise out of or relate to the defendant’s contacts with the forum.” *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021); *accord Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 265 (2017). “Or put just a bit differently, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State’s regulation.” *Kettering Adventist Healthcare v. Jade Designs, LLC*, No. 3:21-CV-136, 2021 WL 4844082, at *4 (S.D. Ohio Oct. 18, 2021) (quoting *Ford Motor Co.*, 141 S. Ct. at 1024). In this case, Plaintiff’s alleged trafficking occurred in California; the Complaint does not allege any conduct that occurred in Ohio. Simply, Plaintiff does not allege any factual basis for specific personal jurisdiction. *See C.T. I*, 2021 WL 602578, at *6 (“Plaintiff does not, and cannot, allege specific personal jurisdiction exists over her claims against these Defendants because her trafficking occurred in Florida . . . .”).

Given the absence of a factual basis for personal jurisdiction over WHR in this case, as reflected in this Court’s prior holdings, the Complaint relies on the nationwide service-of-process provision in Masha’s Law, 18 U.S.C. § 2255(c). *See* ECF No. 1 at ¶ 32 (PageID 11). Masha’s Law provides that a person who, “while a minor,” is trafficked in violation of 18 U.S.C. § 1591 “may sue in any appropriate United States District Court and shall recover the actual damages . . . .” 18 U.S.C. § 2255(a). The statue adds that “process may be served in any district in which the defendant – (A) is an inhabitant; or (B) may be found.” 18 U.S.C. § 2255(c)(2). In its decision in

*In re Hotel TVPRA Litigation*, the Court opined that this provision in Masha's Law allows for personal jurisdiction in this District over hotel brand franchisors in cases involving alleged out-of-state trafficking despite the absence of any connection to Ohio. No. 2:22-cv-03799, 2023 WL 3075851, at *13 (S.D. Ohio Apr. 25, 2023). WHR respectfully asks the Court to reconsider that determination in the context of this case because the Complaint fails to state a claim under Masha's Law and, as a result, the statute's nationwide service-of-process provision does not apply. *See Ramsbottom v. Ashton*, No. 3:21-CV-00272, 2022 WL 106733, at *14 (M.D. Tenn. Jan. 11, 2022) (finding that Section 2255 could not confer nationwide jurisdiction in a case where the Section 2255 claim fails).

A Masha's Law claim, unlike a TVPRA "beneficiary" claim under 18 U.S.C. § 1595(a), requires that a plaintiff meet the more rigorous elements of a perpetrator liability claim under Section 1591. *See, e.g.*, *In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *8 (recognizing that a Masha's Law claim requires a plaintiff "to prove by a preponderance of the evidence that the defendant violated the enumerated statute"); *Doe v. City of Gauley Bridge,* No. 2:21-CV-00491, 2022 WL 3587827, at *12-13 (S.D.W. Va. Aug. 22, 2022); *Upton v. Vicknair,* No. CV 21-407, 2021 WL 2635460, at *5 (E.D. La. June 25, 2021). Thus, even if the Court were to find that a plaintiff need not plead that a defendant committed the actual trafficking, *In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *7, a plaintiff must plead a basis for that defendant's liability under Section 1591. Indeed, while a plaintiff need not allege a pre-existing criminal conviction to bring a Masha's Law claim, "only the offender who perpetrated the offense against the minor" is civilly liable under Masha's Law. H.R. REP. 105-557, 23 (1998).[2] Accordingly, in cases involving allegations of sex

---

[2] *In re Hotel TVPRA Litig.*, 2023 WL 3075851, at * 7 ("A review of circuit precedent demonstrates that the word 'violation' under Masha's Law does not require a showing that Defendants were convicted of trafficking crimes.").

trafficking, the plaintiff must make well-pled allegations showing that the *defendant* (here, WHR) violated 18 U.S.C. § 1591. Construing Masha's Law otherwise—i.e., as providing that a victim of 18 U.S.C. § 1591 can sue any person or entity under Masha's Law—would render it unconstitutionally vague. *See Shuti v. Lynch*, 828 F.3d 440, 445 (6th Cir. 2016) (recognizing that "the Fifth Amendment's prohibition of vague laws is 'applicable to civil as well as criminal actions'" (quoting *Boutilier v. INS*, 387 U.S. 118, 123 (1967)). But the statute does not permit such a construction; it does not identify anyone beyond a perpetrator who can be sued or the grounds on which they can be sued.

Moreover, the Complaint does not allege that Plaintiff was trafficked at the Facilities "while a minor" as required under Masha's Law. 18 U.S.C. § 2255(a). The Complaint alleges that Plaintiff met her traffickers "when she was sixteen (16) years old," and that she was trafficked, generally, while she was a minor. *See* ECF No. 1 at ¶¶ 44, 163 (PageID 13, 40). The Complaint, however, never specifies that Plaintiff was a minor when she was allegedly trafficked at the Facilities between 2010 and 2016. Because the Complaint does not provide Plaintiff's date of birth or her age as of 2010, it fails to allege with "reasonable particularity" facts (i.e., that Plaintiff was trafficked *at the Facilities* as a minor) necessary to invoke Masha's Law and its nationwide service-of-process provision. *Neogen*, 282 F.3d at 887; 18 U.S.C. § 2255(a) (stating that a Masha's Law claim is only available if the plaintiff was a victim of a trafficking crime "while a minor").

The Complaint also lacks well-pled allegations plausibly showing that WHR violated Section 1591 of the TVPRA. The Complaint argues that WHR (which did not exist during the alleged trafficking period but currently is the ultimate parent company to the franchisors of the Days Inn®, Travelodge®, and Super 8® hotel brands) violated Section 1591(a)(2) of the TVPRA.

ECF No. 1 at ¶ 167 (PageID 41).[3] In *United States v. Afyare*, the Sixth Circuit Court of Appeals held that, to violate Section 1591(a)(2), a defendant must "actually participate and commit some 'overt act' that furthers the sex trafficking aspect of the venture," reasoning that the TVPRA does "not criminalize a defendant's 'mere negative acquiescence,' and to do so would create a 'vehicle to ensnare conduct that the statute never contemplated.'" 632 F. App'x 272, 286 (6th Cir. 2016). This Court previously declined to follow *Afyare*'s interpretation of "participation in a venture" in construing a Section 1595(a) claim because *Afyare* addressed criminal liability under Section 1591(a)(2). *See M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 969 (S.D. Ohio 2019). But Masha's Law requires a predicate violation of Section 1591.

Plaintiff's allegations do not state a claim under Section 1591. The Complaint alleges that WHR failed to implement brand standards sufficient to prevent sex trafficking at the Facilities. *See, e.g.*, ECF No. 1 at ¶¶ 120, 126 (PageID 28-30). The Complaint further alleges that, based on their interactions with the trafficker and with Plaintiff, the franchisees' staff should have been aware of her trafficking. *See* ECF No. 1 at ¶¶ 66-101 (PageID 16-22). But nothing in the Complaint suggests that WHR committed "some 'overt act' that furthers the sex trafficking aspect of the venture" at issue. *Afyare*, 632 F. App'x at 286; *accord J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-CV-00672-KJM-JDP, 2022 WL 10626493, at *4 (E.D. Cal. Oct. 18, 2022) ("J.M.'s argument overstates the operative factual allegations. Defendants did not directly rent rooms or Wi-Fi to J.M.'s traffickers; the franchisee hotels and Wi-Fi service providers did."). Holding that these allegations plausibly show a criminal violation of Section 1591(a)(2) would do exactly what the

---

[3] The Complaint alleges that WHR also violated Section 1591(a)(1) because it "knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, and/or solicited Plaintiff." ECF No. 1 at ¶ 168. There are no allegations in the Complaint supporting this conclusory statement that mirrors the language of the statute.

Sixth Circuit warned against in *Afyare*—that is, "ensnare conduct that the statute never contemplated." *Afyare*, 632 F. App'x at 286.

This Court (borrowing from its prior decisions construing the TVPRA's civil remedy provision) recently determined that an alleged failure to implement "preventative policies" to combat human trafficking at hotels triggers criminal liability for hotel brand franchisors under Section 1591(a)(2), which, in turn, gives rise to Masha's Law claims and confers nationwide jurisdiction in this District. *In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *9 ("[T]his Court finds that the minor Plaintiffs have pled that Defendants profited financially from a commercial venture with traffickers who rented rooms in their hotels and failed to implement preventative policies. This is sufficient to allege a violation of § 1591 against them such that they can avail themselves of the nationwide service of process provision pursuant to 18 U.S.C. § 2255(c)(2)."). Respectfully, the Court's Opinion cannot be squared with the Sixth Circuit's holding in *Afyare*. An alleged failure to prevent human trafficking in not sufficient to support a criminal TVPRA violation under Section 1591 for purposes of a Masha's Law claim.

Relatedly, Masha's Law does not provide for vicarious liability. A claim under Masha's Law is limited to perpetrators. *See, e.g.*, *City of Gauley Bridge*, 2022 WL 3587827, at *13 ("Here, Plaintiff concedes that the statute is silent as to vicarious liability. This by itself is an indication that Congress did not intend to permit such a theory. Further, the legislative history of § 2255 further supports a finding that Congress did not intend to permit vicarious liability." (internal citations omitted)). There is no statutory basis to impute any alleged violations of Section 1591(a), whether by a trafficker, an unidentified and unnamed franchisee, or otherwise, to WHR.

Having failed to state a claim under Masha's Law, the statute's nationwide service-of-process provision does not apply. *See Ramsbottom*, 2022 WL 106733, at *14 (finding that Section

2255 could not confer nationwide jurisdiction in a case where the Section 2255 claim has not been

adequately pled); Wright & Miller, 4A FED. PRAC. & PROC. CIV. § 1069.7. The Complaint,

therefore, must be dismissed for lack of personal jurisdiction.

**B.    Even If The Court Determines That It Has Personal Jurisdiction Over WHR, Venue Should Be Transferred To California, Where All Of The Conduct Is Alleged To Have Occurred.**

If the Court determines that Plaintiff has stated a Masha's Law claim against WHR, venue

should be transferred to the Central or Southern District of California, which are the judicial

districts where the Facilities are located. "For the convenience of parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought . . . ." 28 U.S.C. § 1404(a). District courts receive significant

deference when determining whether to transfer venue, but such discretion is not limitless. *See,

e.g.*, *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021) ("[W]e have explained

that a clear abuse of discretion in balancing convenience against judicial economy under § 1404 is

not outside the scope of correctible error on mandamus review." (internal quotations and citations

omitted)), *cert. denied sub nom.*, 142 S. Ct. 1445 (2022).

This Court previously held that there is a "strong interest" in litigating trafficking cases

where the alleged trafficking took place. *C.T. v. Red Roof Inns, Inc.*, No. 2:21-cv-05022, 2022 WL

18003292, at *7 (hereinafter, "*C.T. III*"). Nevertheless, in its *In re Hotel TVPRA Litigation* order,

the Court declined to transfer certain Masha's Law cases, reasoning that "this Court [is] well-

versed in the facts and law" in cases arising from alleged trafficking at hotels. 2023 WL 3075851,

at *20. The Court also gave considerable weight to the fact that Defendants did not "identify any

witnesses who would be unwilling to travel to the Southern District of Ohio," *Id*. at *18, despite

acknowledging that Plaintiff has used a pseudonym, thus making Defendants "unable to identify

anything more specific than general categories of witnesses who could have been present during

the alleged conduct." *Id.* The Court added, "[r]egardless of the location of this litigation, there is no guarantee that non-party witnesses will be present or respond to a subpoena." *Id.* at *19.

In *Samsung*, the district court denied a motion to transfer venue from the Western District of Texas to the Northern District of California, even though the alleged facts had no "meaningful connection to the Western District of Texas." 2 F.4th at 1374. The court acknowledged that the Northern District of California was likely a more convenient venue, but discounted that interest based on its belief that "only a few party witnesses and even fewer non-party witnesses will likely testify at trial." *Id.* The district court also gave significant weight to "judicial economy" and "the possibility of inconsistent rulings" based on its prior experience in similar matters. *Id.* at 1375.

On review, the Court of Appeals for the Federal Circuit granted mandamus and directed the district court to transfer the case to the Northern District of California. The Court of Appeals found that the district court "erroneously discounted the convenience of third-party witnesses by presuming that only a few . . . will likely testify at trial." *Id.* at 1379 (internal quotations omitted). The Court of Appeals added, "the district court overstated the concern about waste of judicial resources," adding further that multidistrict litigation procedures are the proper mechanism to achieve this sort of efficiency, where appropriate. *Id.*; *cf. In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353, 1356 (J.P.M.L. 2020) (finding that TVPRA cases against hotel brand franchisors are unfit for consolidation because "unique issues concerning each plaintiff's sex trafficking allegations predominate in these actions," noting further that "each action involves different alleged sex trafficking ventures, different hotel brands, different owners and employees, different geographic locales, different witnesses, different indicia of sex trafficking, and different time periods"). Any incremental gains in efficiency resulting from keeping the cases in the Western

District of Texas were "not sufficient to justify overriding the inconvenience to the parties and witnesses." *In re Samsung Elecs. Co., Ltd.*, 2 F.4th at 1380.

Similar to *Samsung*, the Court's analysis in its *In re Hotel TVPRA Litigation* order does not—nor could it, given that the complaints did not identify the plaintiffs or the alleged trafficking ventures—afford sufficient weight to the public and private factors in assessing whether to transfer venue. The fact-specific nature of this case and those like it raises real and legitimate concerns about the ability to compel testimony from various non-party witnesses (e.g., the owners of the Facilities, employees of the Facilities, the alleged traffickers, and witnesses to Plaintiff's alleged trafficking, etc.). *See* FED. R. CIV. P. 45. Certainly, this Court has familiarity with the subject matter at issue, but any perceived gain in judicial economy should consider the familiarity of the potential transferee court and, more importantly, the benefit of being able to compel live testimony from third-party witnesses at trial. Accordingly, WHR respectfully requests that the Court reconsider its prior opinion declining to transfer this case to the Central or Southern District of California.

### C.     The Complaint Fails To State A Claim Under Section 1595(a) Of The TVPRA.

If the Court declines to dismiss for lack of personal jurisdiction or transfer this case to the Central or Southern District of California, the Complaint should still be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.[4] "The requirements for liability under § 1595(a) on a 'beneficiary' theory can be stated as follows: (1) the person or entity must 'knowingly benefit[], financially or by receiving anything of value,' (2) from participating in a venture, (3) that the 'person knew or should have known has engaged in an act in violation of this chapter.'" *M.A.*, 425

---

[4] As explained above, Plaintiff has failed to plausibly plead a Masha's Law claim and, as a result, the Complaint does not invoke the statute's nationwide service-of-process provision, thus requiring dismissal for lack of personal jurisdiction pursuant to Rule 12(b)(2). *See supra* § IV(A). For the same reasons, the Masha's Law claim should be dismissed pursuant to Rule 12(b)(6).

F. Supp. 3d at 964; *accord Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 719 (11th Cir. 2021) (hereinafter, "*Red Roof*") ("[A] plaintiff must plausibly allege that the defendant (1) knowingly benefited (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that the undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff.").

### 1. The Complaint lacks well-pled allegations that WHR participated in a TVPRA "venture" with Plaintiff's traffickers.

The TVPRA does not create a duty to prevent trafficking crimes; rather, it gives rise to civil liability against those who commit trafficking crimes or participate in ventures that committed trafficking crimes. *See, e.g.*, *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 182 (E.D. Pa. 2020) ("We do not read the Act as requiring hotels (and other businesses or professions possibly earning money from trafficking) to affirmatively stop the trafficking."). To state a civil TVPRA claim, a plaintiff must plausibly allege a defendant's "participation in a venture" with one or more criminal traffickers. *See* 18 U.S.C. § 1595(a). "The ordinary meaning of participate or participation is to take part in or share with others in common or in an association." *Red Roof*, 21 F.4th at 725. A "venture" is "an undertaking or enterprise involving risk and potential profit." *Id.* at 724; *accord Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017) (recognizing that a "venture" only exists for purposes of Section 1595(a) where "two or more individuals" are "associated in fact"); *M.A.*, 425 F. Supp. 3d at 970 (stating that a venture requires a "continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement").

Significantly, nonfeasance, such as the alleged failure to prevent trafficking in this case, is not sufficient to show "participation." *See, e.g.*, *A.D. v. Wyndham Hotels & Resorts, Inc.*, No.

4:19cv120, 2020 WL 8674205, at *3 (E.D. Va. July 22, 2020) (agreeing that "participation" in a venture "requires some overt act in furtherance of the trafficking; nonfeasance (*i.e.*, the alleged failure to prevent trafficking) is not sufficient"); BLACK'S LAW DICTIONARY 1294 (10th ed. 2014) (defining "participation" as "[t]he act of taking part in something, such as a partnership, a crime . . . .").

The fact that a defendant, such as a hotel owner, provides a service that is misused in connection with someone's trafficking is "not enough" to suggest that the defendant participated in a venture that committed trafficking crimes because there is no common undertaking. *G.G. v. Salesforce.com, Inc.*, 603 F. Supp. 3d 626, 648 (N.D. Ill. 2022). That is because the rental of a hotel room does not, by itself, create a "venture or "common undertaking" between the hotel operator and the hotel guest. *Id.* at 645. ("The mere fact that Salesforce's software played a critical role in Backpage's expansion, indeed, even if such expansion would not be possible without the capabilities provided by that software, is not enough to demonstrate Salesforce's own participation in any venture with Backpage."); *Lawson v. Rubin*, No. 17-CV-6404 (BMC), 2018 WL 2012869, at *14 (E.D.N.Y. Apr. 29, 2018) (dismissing TVPRA claim against the owner of a condominium complex, reasoning that leasing a unit to someone who committed trafficking crimes in their unit was not sufficient).

Against that backdrop, courts (including this one) have found that, to state a claim under Section 1595(a) against a hotel operator, the plaintiff must "at least" plausibly allege "a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *M.A.*, 425 F. Supp. 3d at 970; *see also B.J. v. G6 Hosp., LLC*, No. 22-CV-03765-

MMC, 2023 WL 3569979, at *5 (N.D. Cal. May 19, 2023); *J.B. v. G6 Hosp., LLC*, No. 19-CV-07848-HSG, 2020 WL 4901196, at *9 (N.D. Cal. Aug. 20, 2020).

In establishing the "tacit agreement" standard, the Court considered the reasoning in *Ricchio*, in which the First Circuit Court of Appeals found that the plaintiff pled a "venture" between the trafficker, McLean, and hotel operators, the Patels, based on the following:

> Over the course of several days there, McLean physically and sexually abused Ricchio, repeatedly raping her, starving and drugging her, and leaving her visibly haggard and bruised. He told her that he was grooming her for service as a prostitute subject to his control. McLean had prior commercial dealings with the Patels, which the parties wished to reinstate for profit. McLean and Mr. Patel enthusiastically expressed this intent by exchanging high-fives in the motel's parking lot while speaking about "getting this thing going again," in circumstances in which McLean's coercive and abusive treatment of Ricchio as a sex slave had become apparent to the Patels. Ms. Patel had not only nonchalantly ignored Ricchio's plea for help in escaping from McLean's custody at the motel but, when visiting the rented quarters to demand further payment, had shown indifference to Ricchio's obvious physical deterioration. And in plain daylight view of the front office of the motel, either of the Patels on duty there would have seen McLean grab Ricchio, kick her, and force her back toward the rented quarters when she had tried to escape. In these circumstances, it was a plausible understanding that McLean was forcing sex in the motel room where he held Ricchio hostage, and fairly inferable that the gainful business that Mr. Patel and McLean spoke of had been and would be in supplying sexual gratification.

*Ricchio*, 853 F.3d at 555. The plaintiff in *Ricchio* alleged a "tacit agreement" consistent with the *M.A.* standard, evidenced by high-fives between the hotel owner and the trafficker.

But, as recognized by the Eleventh Circuit Court of Appeals in *Red Roof*, TVPRA claims against hotel brand franchisors (and parent companies of franchisors, like WHR) are different from claims against franchisees (i.e., hotel operators). Franchisors license the use of their brands and proprietary business formats to independent hotel owners and operators (i.e., franchisees) pursuant to arm's-length franchise agreements.[5] Franchisors do *not* own, operate, manage, maintain, or

---

[5] As one court has explained, "a franchise is a commercial arrangement between two businesses which authorizes the franchisee to use the franchisor's intellectual property and brand identity,

employ staff, or otherwise control the day-to-day operations at franchised hotels. Recognizing this distinction, the Eleventh Circuit and numerous other courts have dismissed TVPRA claims against WHR and various hotel brand franchisors for a failure to "connect the dots" or otherwise allege a "venture" between the franchisor and a trafficker. *See, e.g.*, *Red Roof*, 21 F.4th at 727 ("None of these allegations suggest that the franchisors participated in an alleged common undertaking or enterprise with the Does' sex traffickers . . . ."); *E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420, 428 (N.D. Tex. 2021) ("The Court finds that these allegations are not sufficient to plead that Movant [Franchisor] Defendants directly participated in a specific venture that trafficked Plaintiff on specific occasions at the specific hotels mentioned in the FAC."); *K.B. v. Inter-Cont'l Hotels Corp.*, No. 19-CV-1213-AJ, 2020 WL 8674188, at *5 (D.N.H. Sept. 28, 2020) ("To the extent that the plaintiff is asserting a theory of direct liability against the defendants, the court finds that she has failed to plead sufficient facts to support the 'participation in venture' element because the complaint fails to connect the dots between Plaintiff's alleged sex trafficking and these Defendants."); *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-CV-00656-BLF, 2020 WL 4368214, at *5 (N.D. Cal. July 30, 2020) (finding that a TVPRA claim against WHR and various hotel brand franchisors was "insufficiently pled as to the 'participation in venture' element because the Complaint fails to connect the dots between Plaintiff's alleged sex trafficking and these Defendants").

Applying *M.A.*'s "tacit agreement" standard, the Complaint fails to allege that WHR participated in a TVPRA "venture." Indeed, there is no well-pled allegation that WHR (or its franchisor subsidiaries) ever knew of or interacted with Plaintiff's traffickers, much less that WHR

---

marketing experience, and operational methods." *Kerl v. Dennis Rasmussen, Inc.*, 682 N.W.2d 328, 337 (Wis. 2004).

shared any "tacit agreement" with Plaintiff's traffickers. Accordingly, as in *Red Roof* and numerous other cases involving TVPRA claims against hotel brand franchisors, Plaintiff's TVPRA claim against WHR should be dismissed. Put simply, there cannot be a TVPRA "venture" involving WHR absent allegations that WHR knew of, interacted with, and shared a common undertaking or "tacit agreement" with Plaintiff's traffickers.[6]

> ### 2. The Complaint lacks well-pled allegations that WHR "knew or should have known" of any TVPRA "venture" involving Plaintiff or the traffickers.

To state a TVPRA claim, a plaintiff also must make well-pled allegations supporting a plausible inference that the defendant "knew or should have known" the venture in which it participated committed sex trafficking crimes against the plaintiff. *See Red Roof*, 21 F.4th at 723; *M.A.*, 425 F. Supp. 3d at 964. In this case, the Complaint attempts to satisfy the "knew or should have known" requirement with allegations of general knowledge in the "hospitality industry"

---

[6] In some more recent cases, the Court denied certain franchisors' motions to dismiss under a so-called "business venture" theory. *See, e.g.*, *A.R. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-CV-04935, 2022 WL 17741054, at *7 (S.D. Ohio Dec. 16, 2022). In *A.R.*, for instance, the Court reasoned that, as alleged, WHR "was involved in a business venture with the franchisee hotels" that, in turn "benefitted by renting rooms to traffickers despite having constructive knowledge of ongoing trafficking based on the totality of the circumstances." *A.R.*, 2022 WL 17741054, at *7. The term "business venture" does not appear in the Complaint, and the "venture" in which the defendant participates must commit trafficking crimes. *See H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 704 (E.D. Mich. 2020) (recognizing that the TVPRA requires allegations of "sex trafficking *by the particular venture in which the defendant allegedly participated*." (emphasis in original)); *see also, e.g.*, *J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-CV-00672-KJM-JDP, 2022 WL 10626493, at *4 (E.D. Cal. Oct. 18, 2022) ("[The] complaint alleges defendants participated in 'a commercial business venture' where they share their names and quality standards with the franchisee hotels in exchange for a percentage of the hotels' revenue. But these allegations describe a general franchisor-franchisee relationship, not a venture that defendants knew or should have known trafficked J.M." (internal citations omitted)); *L.H. v. Marriott Int'l, Inc.*, 604 F. Supp. 3d 1346, 1361 (S.D. Fla. 2022) (dismissing TVPRA claim against hotel franchisors under a "business venture" theory, reasoning that the complaint failed "to allege that any aspect of a local business venture . . . violated the TVPRA as to L.H.").

about the "human trafficking epidemic," and with alleged online reviews referencing potential sex workers at hotels. *See, e.g.*, ECF No. 1 at ¶¶ 112, 114, 118 (PageID 24-27). That is not sufficient.

General knowledge about sex trafficking within the hotel industry or about unrelated commercial sex activity at hotels cannot satisfy the "knew or should have known" requirement. *See, e.g.*, *Red Roof*, 21 F.4th at 725 ("[T]he defendant must have either actual or constructive knowledge that the *venture*—in which it voluntarily participated and from which it knowingly benefited—violated the *TVPRA as to the plaintiff.*" (emphasis added)); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 938 (D. Or. 2020) (hereinafter, "*A.B. v. Hilton*") ("General knowledge of commercial sex activity occurring at hotels across the United States is insufficient . . . .").

The TVPRA does not provide for liability unless the defendant knew, or at least should have known, that the specific "venture" in which it allegedly participated trafficked a particular plaintiff. *See, e.g.*, *Red Roof*, 21 F.4th at 725; *G.G.*, 603 F. Supp. 3d at 645 ("Section 1595 requires that the venture engage in an act in violation of § 1591, which requires knowledge *as to a specific victim.*" (emphasis added)); *Lundstrom v. Choice Hotels Int'l, Inc.*, No. 21-CV-00619-PAB-SKC, 2021 WL 5579117, at *8 (D. Colo. Nov. 30, 2021) ("Plaintiff alleges that defendant was on notice about the prevalence of sex trafficking generally at its hotels and in the hotel industry. But this is not sufficient to show that defendant should have known about what happened to plaintiff." (internal citations omitted)).[7] "Indeed, the plain language of the financial beneficiary prong clearly

---

[7] *See also, e.g.*, *Reyes-Trujillo v. Four Star Greenhouse, Inc.*, 513 F. Supp. 3d 761, 794 (E.D. Mich. 2021) (finding that plaintiffs failed to allege that the defendants should have known about trafficking crimes because the plaintiffs did "not allege that they notified Defendants of [] threats or that any of Defendants' employees overheard or were otherwise informed of them"); *Jensen v. United States Tennis Ass'n*, No. 20-2422-JWL, 2020 WL 6445117, at *6 (D. Kan. Oct. 30, 2020) ("Plaintiff argues that it is reasonable to infer from this rampant sexual abuse in other sports that USTA knew that Coach Haultain was abusing plaintiff. Plaintiff directs the court to no cases

links the required knowledge to the venture in which the defendant purportedly participated." *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 704 (E.D. Mich. 2020).

"[T]o conclude that franchisors like Wyndham . . . are liable under the TVPRA simply because they were generally aware that sex trafficking sometimes occurred on their franchisees' properties unjustifiably bridges the scienter gap between 'should have known' and 'might have been able to guess.'" *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020). As another court has explained, if such allegations were sufficient:

> [T]he liability of franchisors—which are further removed from the sex trafficking than the actual hotels are—would be much easier proven than the liability of the hotels themselves. This would make no sense. If a plaintiff must show, at least, that a franchisee hotel was or should have been aware of specific sex trafficking conduct in order to violate the TVPRA, there is no interpretive logic by which a franchisor can be held liable under the same statute for having only an abstract awareness of sex trafficking in general.

*Id.*; *accord Doe #9 v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-5016, 2021 WL 1186333, at *2 (S.D. Tex. Mar. 30, 2021) ("Plaintiff has not plausibly alleged how Defendants 'knew or should have known' that she was being trafficked at the La Quinta.").

Consistent with or in the wake of *Red Roof*, a substantial majority of district courts addressing these issues have granted motions to dismiss. *See, e.g., Lundstrom*, 2021 WL 5579117, at *8 ("Plaintiff alleges that defendant was on notice about the prevalence of sex trafficking generally at its hotels and in the hotel industry. But this is not sufficient to show that defendant should have known about what happened to plaintiff." (internal citations omitted); *J.L. v. Best W.*

---

supporting the inference she suggests and it is simply too attenuated to be reasonable."); *Ratha v. Phatthana Seafood Co., Ltd.*, No. CV 16-4271-JFW (ASx), 2017 WL 8293174, at *5 (C.D. Cal. Dec. 21, 2017) (rejecting the plaintiffs' argument that the defendants knew or should have known of the alleged labor trafficking "based on general reports about human trafficking in Thailand and reports and letters by advocacy groups . . . criticizing the working conditions at Phatthana's Songkhla factory").

*Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064 (D. Colo. 2021) ("Plaintiff alleges that Wyndham was on notice about the prevalence of sex trafficking generally at its hotels. But this is not sufficient to show that Wyndham should have known about what happened to this plaintiff."); *E.S.*, 510 F. Supp. 3d at 428 ("[T]he FAC does not state how Movant Defendants knew or should have known Plaintiff was being trafficked."); *A.B. v. Hilton*, 484 F. Supp. 3d at 938 ("[A]lthough Plaintiff's allegations indicate that Defendants had notice of sex trafficking generally occurring at their hotels, Plaintiff has not alleged facts which sufficiently link notice of Plaintiff A.B.'s sex trafficking to any of these Defendants."); *B.M.*, 2020 WL 4368214, at *6 ("The Complaint fails to allege facts as to *how* Wyndham (the ultimate parent company of the franchisor) and Choice ([a] franchisor) knew or should have known Plaintiff was being trafficked. . . . Plaintiff must allege facts showing these Defendants knew or should have known of her trafficking—and she fails to do so in her Complaint."); *A.D.*, 2020 WL 8674205, at *6 ("A.D. has failed to plead that Wyndham knew or should have known it was participating in sex trafficking."). The TVPRA claim against WHR in this case should be dismissed for the same reasons.

### 3. The Complaint lacks well-pled allegations necessary to state a claim for vicarious liability.

Unlike the *M.A.* case, Plaintiff does not name the franchisees that own and operate the Facilities as defendants. Instead, Plaintiff relies on conclusory allegations to impute alleged liability under the TVPRA from the franchisees to WHR.[8] The Complaint alleges only that

---

[8] Unlike other TVPRA cases before the Court, Plaintiff does not allege that WHR is a joint employer of franchisee employees. In any event, "joint employer" is an employment law concept that has been invoked in the franchise context to give franchisee employees grounds for suing franchisors under certain narrow circumstances; the "joint employer" doctrine is not a basis for imputing liability to third parties from a franchisee to a franchisor. *See, e.g.*, *Bricker v. R & A Pizza, Inc.*, 804 F. Supp. 2d 615, 621-22 (S.D. Ohio 2011) ("Under this doctrine, *an employee*, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, *may impose liability for violations of employment law on the constructive employer*, on the theory that

"Wyndham is liable, either directly, vicariously, or indirectly through an agency relationship for acts and/or omissions of the employees at its branded hotels . . . ." ECF No. 1 at ¶ 24(b) (PageID 7).

Subsequent to this Court's decision in *M.A.*, a majority of courts that have entertained vicarious liability allegations under the TVPRA have applied federal common law (an issue that was not addressed in *M.A.*). *See, e.g., J.C. v. Choice Hotels Int'l, Inc.*, No. 20-CV-00155-WHO, 2020 WL 3035794, at *1 (N.D. Cal. June 5, 2020) (citing *Meyer v. Holley*, 537 U.S. 280, 287-91 (2003)).[9] In recent cases, the Court declined to address whether federal or common law applies,

---

this other entity is the employee's joint employer." (emphasis added) (internal quotations and alterations omitted)); *accord Thomas v. Papa John's Int'l, Inc.*, No. 1:17CV411, 2019 WL 4743637, at *4 (S.D. Ohio Sept. 29, 2019); *Griffith v. Coney Food Corp.*, No. 19-CV-1601 (NGG)(JO), 2020 WL 4748452, at *3 (E.D.N.Y. Aug. 17, 2020). Moreover, recognizing that franchise relationships typically do not give rise to joint employer status, this doctrine has been narrowly applied. *See, e.g., Ries v. McDonald's USA, LLC*, No. 1:20-cv-2, 2021 WL 5768436, at *2-5 (W.D. Mich. Dec. 6, 2021) ("McDonald's did not meaningfully participate in employment decisions or possess sufficient control over the terms of Plaintiffs' employment to qualify as a joint employer. The control that McDonald's did have in its relationship with Franchisee was control over conformity to standard operational details inherent in many franchise settings and the power to terminate the franchises." (internal quotations and alterations omitted)); *Bricker*, 804 F. Supp. 2d at 621-22 ("Generally, a franchisor is not the employer of employees of the franchisee. . . The Brickers have made no factual allegations in their amended complaint suggesting that they were constructively employed by Domino's.").

[9] When a statute uses language fairly implicating agency principles, courts assume that Congress intended for the application of "traditional" agency law principles. *See Meyer v. Holley*, 537 U.S. 280, 285 (2003); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754 (1998) ("We turn to principles of agency law, for the term 'employer' is defined under Title VII to include 'agents.'"). Section 1595(a) sets forth the circumstances in which civil liability can be brought indirectly against non-perpetrators, and it does not provide for vicarious liability. *Cf. Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 689 (7th Cir. 2008) (en banc) (Posner, J.) ("So statutory silence on the subject of secondary liability means there is none . . . ."). Common law cannot be used to expand liability in a way that is inconsistent with the TVPRA; construing the TVPRA to have yet another layer of indirect liability on top of "beneficiary liability" under Section 1595(a) would have that effect. *See, e.g., Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177, (1994); *Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77, 97 (1981) ("But the authority to construe a statute is fundamentally different from the authority to fashion a new rule . . . which Congress has decided not to adopt.").

but found that the plaintiffs sufficiently alleged that WHR was liable, as the franchisees' principal, for any alleged TVPRA violations by the franchisees. *See, e.g.*, *A.R. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-CV-04935, 2022 WL 17741054, at *7-10 (S.D. Ohio Dec. 16, 2022). The Court reasoned that the alleged control over hotel franchises "is directed towards attaining more revenue and commercial success, which is the objective Defendant Wyndham, as principal, seeks." *Id.* at *9 (citing *Gen. Acquisition, Inc. v. GenCorp Inc.*, 766 F. Supp. 1460, 1469 (S.D. Ohio 1990)). Respectfully, that is not the law and cannot be the law. If it were, any trademark licensor (not just hotel brand franchisors) would be saddled with the liability of their licensees, simply for taking steps to control the use of their trademarks—something they are required to do under the Lanham Act, or else risk losing their trademark protections.

In attempting to impute liability from a franchisee to a franchisor (let alone the current parent company of a franchisor), a plaintiff's allegations must be considered in the context of the franchisor's obligations under the Lanham Act, which "requires supervision of trademark licensees at the expense of abandonment of the trademark," the purpose being "to ensure the integrity of registered trademarks, not to create a federal law of agency." *Oberlin v. Marlin Am. Corp.*, 596 F.2d 1322, 1327-28 (7th Cir. 1979); *Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.*, 967 F.2d 1516, 1520 (11th Cir. 1992) (same). To that end, a franchisor's imposition of brand standards aimed at promoting uniformity and quality across a franchise system, as a matter of law, cannot give rise to agency under federal (or state) common law. *See, e.g.*, *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 290 (5th Cir. 2004) (rejecting agency arguments against franchisor under federal agency principles); *Arguello v. Conoco, Inc.*, 207 F.3d 803, 806 (5th Cir. 2000) (same); *Neff v. Am. Dairy Queen Corp.*, 58 F.3d 1063, 1070 (5th Cir. 1995) (same); *Douglass v. Patel*, No. 04-CV-322-D, 2006 WL 8432446, at *3 (D. Wyo. Jan. 6, 2006) (finding, under federal

common law, that the franchisor of Super 8® hotel brand "did not exert sufficient control over the hotel to warrant the imposition of vicarious liability" under federal agency principles); *accord Barrett-O'Neill v. Lalo, LLC*, No. 2:14-cv-194, 2014 WL 3895679, at *4 (S.D. Ohio Aug. 8, 2014) (holding that, notwithstanding the franchisor's provision of "training," allegations were insufficient to support agency).[10]

In this case, Plaintiff has not alleged any basis for holding WHR vicariously liable. *See, e.g.*, *H.G.*, 489 F. Supp. 3d at 708 (dismissing TVPRA claim based on agency because the plaintiff "failed to plausibly allege" that the franchisor defendants had "'day-to-day' control" over the franchised hotels); *S.J.*, 473 F. Supp. 3d at 156 (dismissing the TVPRA claim based on agency because the plaintiff's allegations, "even if proven true, would fail to sufficiently demonstrate that the franchisor defendants exercised [] complete control over the day-to-day operations of the franchisee's business" (internal quotations omitted)); *accord Red Roof*, 21 F.4th at 729 (recognizing that plaintiff's allegations failed to plausibly establish agency under Georgia law, noting that the allegations were "mere recitations of the requirements for franchisor liability").

---

[10] *See also Kerl*, 682 N.W.2d at 337-38 ("[A] franchise is a commercial arrangement between two businesses which authorizes the franchisee to use the franchisor's intellectual property and brand identity, marketing experience, and operational methods. . . . [A]lthough franchise agreements typically impose detailed requirements on the franchisee's operations [], the existence of these contractual requirements does not mean that franchisors have a role in managing the day-to-day operations of their franchisees. To the contrary, the imposition of quality and operational requirements by contract suggests that the franchisor does not intervene in the daily operation and management of the independent business of the franchisee. In addition, because many franchise relationships include a license to use the franchisor's trade or service mark, the detailed quality and operational standards and inspection rights specified in the franchise agreement are integral to the protection of the franchisor's trade or service mark under the Lanham Act. The purpose of the Lanham Act, however, is to ensure the integrity of the registered trademarks, not to create a federal law of agency or to automatically saddle the licensor with the responsibilities under state law of a principal for his agent." (internal citations, quotations, and alterations omitted)).

**D.    Service Was Untimely.**

The Complaint should be dismissed because Plaintiff failed to timely serve WHR. Rule 4(m) of the Federal Rules of Civil Procedure provides that a defendant must be served within ninety days of the filing of the complaint, or else "the court—on motion or its own notice to the plaintiff—*must* dismiss the action without prejudice against the defendant or order that service be made within a specified time." FED. R. CIV. P. 4(m) (emphasis added); *Hinton v. U.S. Postal Service*, 68 F.3d 474 (6th Cir. 1995) ("We have also held that dismissal is mandatory for failure to follow Rule 4."); *cf. Siddhar v. Sivanesan*, No. 2:13-cv-747, 2014 WL 1653145 (S.D. Ohio Apr. 24, 2014) (citing *Harris v. City of Cleveland*, 7 F. App'x 452, 456 (6th Cir. 2001)). Plaintiff failed to effectuate service within the ninety-day period. *See, e.g.*, *Friedman v. Est. of Presser*, 929 F.2d 1151, 1157 (6th Cir. 1991). Therefore, the Complaint should be dismissed pursuant to Rule 12(b)(4) and/or 12(b)(5).

**E.    WHR Respectfully Requests That, In The Event The Court Denies WHR's Motion, That It Certify The Issues For Interlocutory Appeal Pursuant To 28 U.S.C. § 1292(b) Given The Repetitive And Determinative Nature Of These Novel Issues.**

An order is eligible for certification for interlocutory appeal if it "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *In re City of Memphis*, 293 F.3d at 350. If the Court denies WHR's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) or failure to state a claim under Rule 12(b)(6), WHR requests that the Court certify the following questions for interlocutory appeal: (1) whether a plaintiff must adequately allege a violation of 18 U.S.C. § 1591(a) against a defendant in order to state a claim under 18 U.S.C. § 2255 and invoke nationwide service of process and, if so, did the Complaint accomplish that here with respect to WHR; and (2) whether

a plaintiff must plausibly allege that a defendant knowingly benefited from participating in a venture that violated Section 1591(a) as to the plaintiff and that the defendant had constructive or actual knowledge that the undertaking or venture violated Section 1591(a) as to the plaintiff in order to state a claim under 18 U.S.C. § 1595(a) and, if so, did the Complaint accomplish that here with respect to WHR.

### 1.      Both questions implicate controlling legal issues.

"A legal issue is controlling if it could materially affect the outcome of the case." *In re City of Memphis*, 293 F.3d at 351; *see also In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1172 n.8 (6th Cir. 1992) (recognizing that the resolution of an issue "need not necessarily terminate an action" or "have precedential value for a number of pending cases" to be "controlling"); *Newsome v. Young Supply Co.*, 873 F. Supp. 2d 872, 876 (E.D. Mich. 2012) (describing the threshold for demonstrating that a question of law is "controlling" as a "low bar" in the Sixth Circuit, given that all "that must be shown . . . is that resolution of the issue on appeal could materially affect the outcome of the litigation in the district court"); *see also*, *In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017) (recognizing that the "sufficiency of a complaint is a question of law" that is "undoubtedly controlling" (internal quotations omitted)); *U.S. ex rel. Elliott v. Brickman Group Ltd., LLC*, 845 F. Supp. 2d 858, 865 (S.D. Ohio 2012) (recognizing that rulings on motions to dismiss under Rule 12(b)(6) involve controlling questions of law). If, for example, the Sixth Circuit finds that Plaintiff has not adequately pled that WHR violated 18 U.S.C. § 1591, it may determine that the Court lacks personal jurisdiction under Masha's Law. 18 U.S.C. § 1591(c). Similarly, if an alleged failure to combat trafficking is not tantamount "participation in a venture" under Section 1595(a), then Plaintiff's direct "beneficiary" theory of liability would fail as a matter of law.

Given the increasing number of cases in this District that allege trafficking on the premises of hotels (including hotels outside of Ohio), clear direction from the Sixth Circuit on these

controlling questions of law is in the best interest of all involved and will promote judicial economy.

### 2. There is substantial ground for a difference of opinion on both questions.

A substantial ground for difference of opinion exists for purposes of 28 U.S.C. § 1292(b) where (i) "a difference of opinion exists within the controlling circuit," (ii) the "circuits are split on the question," or (iii) the question is "novel" and "there is little precedent." *U.S. ex rel. Fry v. Health All. Of Greater Cincinnati*, No. 1:03-CV-00167, 2009 WL 485501, at *1 (S.D. Ohio Feb. 26, 2009); *Eagan v. CSX Transp., Inc.*, 294 F. Supp. 2d 911, 916 (E.D. Mich. 2003); *Gaylord Entm't Co. v. Gilmore Entm't Grp.*, 187 F. Supp. 2d 926, 956 (M.D. Tenn. 2001). For example, the Sixth Circuit explained in *Afyare* that 18 U.S.C. § 1591, the predicate crime for the Masha's Law claim asserted in this case, does "not criminalize a defendant's 'mere negative acquiescence,' and to do so would create a 'vehicle to ensnare conduct that the statute never contemplated'" 632 F. App'x at 286; *accord Ramsbottom*, 2022 WL 106733, at *14. This Court and others have similarly recognized that Masha's Law presents novel legal issues that are not well developed. *In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *6 (S.D. Ohio Apr. 25, 2023) ("The law interpreting 18 U.S.C. § 2255 is far from settled and opinions differ across federal district courts."); *Ramsbottom*, 2022 WL 106733, at *14 (holding that Masha's Law did not apply in what it described as an issue of "first impression" and, as a result, personal jurisdiction was lacking); *compare also, e.g.*, *Doe v. City of Gauley Bridge*, No. 2:21-CV-00491, 2022 WL 3587827, at *13 (S.D.W. Va. Aug. 22, 2022) (holding that Masha's Law does not allow for secondary liability theories), *with Jane Doe No. 8 v. Royal Caribbean Cruises, Ltd.*, 860 F. Supp. 2d 1337, 1342 (S.D. Fla. 2012) (finding that cruise line could be held vicariously liable under Masha's Law using

federal maritime principles that impose strict liability on cruise lines for a crew member's assault of a passenger).

Moreover, outside of this District, a growing and substantial majority of other federal courts throughout the United States, including some in the Sixth Circuit, have dismissed TVPRA claims against hotel brand franchisors to one degree or another. *See, e.g.*, *A.R.*, 2022 WL 17741054, at *7-8 (noting that "several recent court cases" dismissed TVPRA claims against WHR and various hotel brand franchisors, and expressly departing from the Eleventh Circuit's decision in *Red Roof* because it "is not controlling here"); *see also, e.g.*, *Red Roof*, 21 F.4th at 724 (11th Circuit affirming dismissal of TVPRA claims against WHR and various hotel brand franchisors, while noting that "district courts are all over the map" in how they had been interpreting the TVPRA); *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697 (E.D. Mich. 2020) (dismissing TVPRA claims against hotel brand franchisors).[11]

Given the differences of opinion on these issues among courts in the Sixth Circuit and elsewhere, certification for interlocutory appeal is appropriate and needed for the efficient adjudication of the cases currently pending in this District.

---

[11] *B.J. v. G6 Hosp., LLC*, No. 22-CV-03765-MMC, 2023 WL 3569979 (N.D. Cal. May 19, 2023); *A.D. v. Marriott Int'l, Inc.*, No. 2:22-CV-645-JES-NPM, 2023 WL 2991042, at *1 (M.D. Fla. Apr. 18, 2023); *J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-CV-00672-KJM-JDP, 2022 WL 10626493 (E.D. Cal. Oct. 18, 2022); *L.H. v. Marriott Int'l, Inc.*, 604 F. Supp. 3d 1346 (S.D. Fla. 2022); *Lundstrom v. Choice Hotels Int'l, Inc.*, No. 21-CV-00619-PAB-SKC, 2021 WL 5579117 (D. Colo. Nov. 30, 2021); *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018 (D. Or. 2021); *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048 (D. Colo. 2021); *E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420 (N.D. Tex. 2021); *K.B. v. Inter-Cont'l Hotels Corp.*, No. 19-CV-1213-AJ, 2020 WL 8674188 (D.N.H. Sept. 28, 2020); *A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19CV120, 2020 WL 9550005 (E.D. Va. Sept. 21, 2020); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 929 (D. Or. 2020); *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-CV-00656-BLF, 2020 WL 4368214 (N.D. Cal. July 30, 2020); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147 (E.D.N.Y. 2020); *Doe 1 v. Red Roof Inns, Inc.*, No. 1:19-CV-03840-WMR, 2020 WL 1872335 (N.D. Ga. Apr. 13, 2020), *aff'd sub nom.* 21 F.4th 714 (11th Cir. 2021).

V.    **CONCLUSION & REQUEST FOR RELIEF**

For the foregoing reasons, WHR respectfully requests that the Court dismiss the Complaint for lack of personal jurisdiction, insufficient process/service of process, and for failure to state a claim. Alternatively, WHR respectfully requests that this case be transferred under 28 U.S.C. § 1404(a) to the Central or Southern District of California, where the alleged events giving rise to Plaintiff's claims occurred. Absent a dismissal or transfer, WHR respectfully requests that the Court certify the questions of law identified herein for interlocutory appeal to the Sixth Circuit Court of Appeals pursuant to 28 U.S.C. § 1292(b).

Dated: June 8, 2023                    Respectfully submitted,

                                       /s/ Michael R. Reed
                                       Michael R. Reed (0063995)
                                       Elisé K Yarnell (0093996)
                                       Hahn Loeser & Parks, LLP
                                       65 East State Street, Suite 1400
                                       Columbus, Ohio 43215
                                       T: 614.233.5165
                                       F: 614.221.5909
                                       mreed@hahnlaw.com
                                       eyarnell@hahnlaw.com

                                       David S. Sager (*pro hac vice*)
                                       DLA Piper LLP (US)
                                       51 John F. Kennedy Parkway, Suite 120
                                       Short Hills, New Jersey 07078-2704
                                       T: 973.520.2550
                                       F: 973.520.2551
                                       david.sager@us.dlapiper.com

                                       Melissa A. Reinckens (*pro hac vice*)
                                       DLA Piper LLP (US)
                                       4365 Executive Drive, Suite 1100
                                       San Diego, California 92121-2133
                                       T: 619.699.2798
                                       F: 619.764.6624
                                       melissa.reinckens@us.dlapiper.com

                                       Christopher B. Donovan (*pro hac vice*)
                                       DLA Piper LLP (US)

845 Texas Ave., Suite 3800
Houston, Texas 77002
T: 713.425.8449
F: 713.425.6040
christopher.b.donovan@us.dlapiper.com

*Counsel for Defendant*
*Wyndham Hotels & Resorts, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 8th day of June 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notice of such filing to all attorneys of record.

*/s/ Elisé K. Yarnell*_____
Elisé K. Yarnell
